IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Robert Taylor, | Case No.: 6:17-cv-02379-MGL |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Security National Insurance Co., | |
| Defendant. | |

Plaintiff Robert Taylor ("Taylor" or "Plaintiff"), by and through undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. Taylor seeks an adjudication of his rights under the liability insurance policy that Defendant Security National Insurance Co. ("Security National" or "Defendant") issued. Taylor seeks a declaration that Security National is obligated under the policy to appear, defend, and indemnify Taylor in connection with criminal charges filed against him.

2. Declaratory judgment is appropriate because Taylor has been named in an indictment, which triggers coverage under Security National's policy. Security National previously has denied coverage to similarly-situated individuals named in the same charging document as Taylor and whose coverage is based on the same set of operative facts, creating an actual and justiciable controversy between Taylor and Security National. This coverage issue previously was litigated before this Court in a case captioned *Security National Insurance Co. v. GrandSouth Bank, et al.*, Civil Action Number 6:17-CV-11-MGL. Upon information and belief, the coverage dispute was settled privately between the parties and the Court made no final determination regarding coverage.

3. The Court's determination of the coverage under the policy would settle the controversy and serve the important purpose of providing Taylor with certainty regarding the coverage available for his defense in the criminal case.

## PARTIES

4. Plaintiff Robert Taylor is an adult citizen and resident of Greenville, South Carolina.

5. Defendant Security National Insurance Co. is a corporation organized under the laws of the state of Delaware with a principal place of business in Texas.

6. Upon information and belief, at all times relevant to the Complaint, Security National was licensed or authorized by various states, including South Carolina, to sell insurance policies such as the one at issue in this Complaint.

## JURISDICTION AND VENUE

7. This Court enjoys subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity among the parties and the amount in controversy exceeds $75,000.

8. This Court has personal jurisdiction over Security National, which has minimum contacts with the state of South Carolina and issues insurance policies to individuals and companies in South Carolina.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). The conduct giving rise to this claim occurred in this district, and the services at issue were provided in this district. Additionally, this Court was the venue for previous litigation involving the same insurance policy and its application to the same underlying operative facts.

## FACTUAL ALLEGATIONS

### *Security National Directors and Officers Liability Insurance Policy*

10.     Security National issued Directors and Officers Liability Insurance Policy No. SDO1066435 04 to GrandSouth Bank ("Bank") for the policy period from August 6, 2014 through August 6, 2017 ("Policy").  A true and accurate copy of the Policy is attached as Exhibit A to this Complaint.

11.     Prior to the issuance of the Policy, the Bank had purchased other previous policies from Security National.  During the time period of September 2009 through August 2014, the Bank paid approximately $127,000 in insurance premiums to Security National and its predecessors.

12.     Under Insuring Agreement A of the Policy, the policy provides coverage for an insured person's loss "that is a result of a claim for a management practices wrongful act first made during the policy period."

13.     An "insured person" is defined as "any person who was, now is, or shall be a director, officer, trustee, appointed member of an advisory board or committee, volunteer, organizer, or employee of the company."  Ex. A, Section III.P.

14.     A "claim" is defined to include, among other things, "a criminal proceeding commenced by a return of an indictment," and provides that a "claim shall be deemed to have been made on the date . . . that the judicial or administrative proceeding is filed in court . . . ."  *See* Ex. A, Section III.B.4.

15.     A "management practices wrongful act" includes "any actual or alleged, misstatement, misleading statement, error or omission, or neglect or breach of duty by an insured

3

person acting solely in their capacity as" an "officer . . . or employee of the company." *See* Ex. A, Section III.U.1.

16. "Interrelated wrongful acts" are "wrongful acts that have as a common nexus any fact, circumstance, situation, event, transaction or series of fact, circumstances, situations, events or transactions." *See* Ex. A, Section III.Q.

17. The Policy is a "claims made" policy, such that the Policy covers claims that are first made during the policy period. *See* Ex. A, Section II.

18. The claim encompasses all interrelated wrongful acts, and therefore any subsequent claim relates back to the date of the first claim arising from the interrelated wrongful acts.

19. In other words, even if the insured's demand for coverage is made outside the policy period, coverage exists when the claim against the insured, such as the return of an indictment, was made within the policy period.

20. Though the Policy contains a number of exclusions from coverage for specific types of conduct or specific types of loss, the Policy nonetheless provides that "the insured person or the company shall be indemnified for defense expenses as to any claim alleging such fraudulent, dishonest or criminal actions," Ex. A, Section IV.A.7, as well as "for defense expenses as to any claim alleging such willful failure" to "comply with any law or any governmental or administrative order or regulation," Ex. A, Section IV.A.8.

21. Taylor was a Vice President and officer of the Bank during the Policy period, and accordingly is an "insured person" under the Policy.

22. Before August 29, 2017, Taylor had never been named or included as a party or defendant in any civil or criminal action in any way related to the matters at issue in this case.

4

*Criminal Proceeding*

23. On June 26, 2016, a grand jury empaneled in the Middle District of North Carolina returned an indictment charging Douglas Alan Corriher ("Corriher") and Shannon Michelle Drake ("Drake") with various offenses. On November 29, 2016, the grand jury returned an indictment superseding its original charges and adding charges against Ronald Keith Earnest ("Earnest"). On August 29, 2017, the grand jury returned a second superseding indictment adding charges against Taylor. The case is pending before the United States District Court for the Middle District of North Carolina, under case number 1:16-CR-205 ("Criminal Proceeding"). A true and accurate copy of the Second Superseding Indictment is attached hereto as Exhibit B.

24. The charges against Taylor in the Criminal Proceeding arose from the time that Taylor served as the Bank's Vice President and from work on the Bank's behalf.

25. Specifically, the charges in the Criminal Proceeding allege that Taylor, along with Corriher, Drake, Earnest, and a Bank Customer, conspired to implement a fraudulent factoring scheme in order to circumvent the legal lending limit and to defraud the Internal Revenue Service, in violation of various statutes and regulations.

*Coverage Dispute*

26. On June 30, 2016, the Bank notified Security National of the indictment in the Criminal Proceeding. The Bank requested coverage for Corriher and Drake under the Policy.

27. Following the return of the superseding indictment on November 29, 2016, Earnest also demanded coverage under the Policy.

28. On January 4, 2017, Security National issued its final determination regarding coverage for Corriher, Drake, and Earnest. Security National denied coverage for defense

expenses arising from the Criminal Proceeding. A copy of Security National's letter denying coverage, which Security National previously filed with this Court, is attached hereto as Exhibit C.

29. The day before it issued the letter denying coverage, Security National filed suit in this Court seeking a declaratory judgment resolving the coverage dispute. That case was captioned *Security National Insurance Co. v. GrandSouth Bank, et al.*, Civil Action Number 6:17-cv-11-MGL ("First Coverage Suit").

### *Security National's Bad Faith Actions Toward its Insureds*

30. Upon information and belief, Security National's denial of coverage under the Policy for the claim as to Corriher, Drake, and Earnest (collectively, "Initial Claimants") was made in bad faith.

31. As set forth in more detail in the pleadings in the First Coverage Suit, upon receipt of the Initial Claimants' demand for coverage, Security National represented to the Initial Claimants that the Policy covered their defense costs after indictment. *See* email correspondence between Initial Claimants' counsel and Security National's representatives, previously filed with this Court and attached hereto as Exhibit D.

32. Security National later reversed its position and denied the Initial Claimants' demand for coverage.

33. Discovery in the First Coverage Suit revealed that Security National's denial was fraudulent and made in bad faith.

34. Despite having internally concluded that the Initial Claimants' claim was covered under the Policy, Security National changed its position once it understood the expense associated with providing coverage for the Criminal Proceeding.

35. After receiving cost estimates for the defense in the Criminal Proceeding, Security National engaged outside claims counsel to manufacture a reason to deny coverage and avoid the claims. *See* claims notes listing at SN2651-52, previously filed with this Court and attached hereto as Exhibit E.

36. Security National's denial of the claim was based in part on the claim arising before the coverage period—when, in fact, the Bank had disclosed the investigation to Security National during the renewal of the policy and Security National internally determined that coverage existed. *See* claims notes listing at SN2656, previously filed with this Court and attached hereto as Exhibit F.

37. In other words, Security National's purported primary reason for denial was contradicted by its own internal records and analysis.

38. Moreover, during the claims review process Security National's representatives purposely avoided posting a large loss notice and a realistic coverage estimate to Security National's reserves. *See* Excerpt from Deposition of Amanda Buishas, previously filed with this Court and attached hereto as Exhibit G.

39. Security National avoided posting the reserve and paying the claim to improve the appearance of the financial health of its parent company, AmTrust Financial Services, Inc. ("AmTrust"), a publicly-traded corporation.

40. In fact, AmTrust currently is under investigation by the SEC, FBI, and Department of Justice for securities fraud for its failure to accurately report reserves. AmTrust is accused of underreporting its reserves in order to fraudulently improve the appearance of its financial disclosures. *See* news articles on investigation, previously submitted to this Court and attached hereto as Exhibit H.

41. In addition to its specious and fraudulent coverage denial, as set forth in more detail in the pleadings in the First Coverage Suit, Security National engaged in dilatory behavior and discovery violations during the First Coverage Suit, prejudicing the interests of the Initial Claimants. Security National's abusive behavior included failing to make complete and accurate Rule 26(a)(1) disclosures, failing to provide a complete and accurate Rule 26(f) report, and unreasonably delaying the scheduling of key depositions.

### *Instant Claim for Coverage*

42. Taylor is an insured under the Policy who has fully performed all of his obligations under the Policy.

43. Security National is obligated to provide Taylor the benefits due under the Policy—namely, Taylor's defense expenses associated with the Criminal Proceeding.

44. On September 5, 2017, Taylor demanded that Security National provide coverage under the Policy for his defense expenses associated with the Criminal Proceeding. A true and accurate copy of Taylor's demand for coverage is attached hereto as Exhibit I.

45. Owing to Security National's previous denial of coverage under the same Policy and based on the same claim, as well as Security National's previous bad-faith dealings with its insureds, Taylor contemporaneously filed this suit seeking declaratory relief ("Second Coverage Suit").

### **FIRST CLAIM FOR RELIEF**

### **[Declaratory Judgment]**

46. Taylor hereby incorporates by reference the allegations set forth in paragraphs 1 to 45 of this Complaint as if fully set forth herein.

47. The Policy is a "claims made" policy.

48. Coverage under the Policy is triggered by a claim for a wrongful act that was first made during the policy period or during the extended reporting period set forth under the Policy.

49. The indictment, superseding indictment, and second superseding indictment constitute a claim under the Policy.

50. The wrongful acts alleged in the indictment, superseding indictment, and second superseding indictment involve the same facts, circumstances, situations, events, and transactions.

51. Accordingly, the indictment, superseding indictment, and second superseding indictment involve interrelated wrongful acts and are a single claim first made on June 26, 2016.

52. The policy period for the Policy was from August 2, 2014 to August 6, 2017.

53. The claim was made during the policy period for the Policy.

54. Taylor's defense costs for the Criminal Proceeding are covered under the Policy and he has made a demand that Security National cover his defense costs.

55. No other exclusions under the Policy would prevent Security National's coverage of Taylor's defense costs for the Criminal Proceeding.

56. There exists a controversy as to whether the Policy provides coverage for Taylor's defense in the Criminal Proceeding.

57. Taylor seeks a declaration pursuant to 28 U.S.C. § 2201 that Security National is obligated to pay for Taylor's billed, unbilled, and future legal services provided and costs incurred in connection with Taylor's defense in the Criminal Proceeding until such time as his defense is concluded.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Robert Taylor prays the Court for the following relief:

1. Entry of a judgment declaring that (a) Taylor's defense in the Criminal Proceeding is covered under the Policy and (b) Security National is liable for the cost of the legal services counsel has provided to date for Taylor's defense in the Criminal Proceeding;

2. That the Court tax the costs of this action against Security National; and

3. That Taylor be granted such other relief as the Court deems just and proper.

BANNISTER, WYATT & STALVEY, LLC

James W. Bannister
Fed. ID No.: 6902;  SC Bar #8895
P.O. Box 10007
Greenville, SC 29603
Phone:  864-298-0084
Fax:  864-298-0146
jbannsiter@bannisterwyatt.com
ATTORNEY FOR PLAINTIFF