IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Robert Taylor, | ) Civil Action No. 6:17-cv-2379-DCC |
| Plaintiff, | ) |
| vs. | ) **OPINION AND ORDER** |
| Security National Insurance Co., | ) |
| Defendant. | ) |

This matter is before the Court on Plaintiff's Motion to Expedite Review and for Preliminary Injunction, Plaintiff's Motion for Partial Judgment on the Pleadings, Defendant's Motion for Summary Judgment, and Plaintiff's Motion for Partial Summary Judgment. ECF Nos. 26, 34, 57, 58. With respect to the Motion to Expedite Review and for Preliminary Injunction and the Motion for Partial Judgment on the Pleadings, all responses and replies have been filed. ECF Nos. 33, 37, 42, 44. Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment on January 31, 2018, and Defendant filed a Reply on February 5, 2018. ECF Nos. 62, 64. Defendant filed a Response in Opposition to Plaintiff's Motion for Partial Summary Judgment on January 31, 2018. ECF No. 63. Accordingly, the Motions are ripe for review.

## BACKGROUND

This action was filed on September 5, 2017, seeking a declaration that Defendant is obligated under a liability insurance policy to appear, defend, and indemnify Plaintiff in connection with criminal charges filed against him. ECF No. 1 at 1. The parties agree that Defendant issued Directors and Liability Insurance Policy No. SDO1066435 04 ("the Policy") to GrandSouth Bank ("the Bank") for the policy period from August 6, 2014,

through August 6, 2017. ECF No. 57-1. Plaintiff was a Vice-President of the Bank during this time. ECF No. 57 at 2. Prior to issuance of the Policy, the Bank had been involved in two civil actions, *Aquent LLC v. Bruce Gregory Harrison, et al.*, C/A No. 09-cvs-9613 (N.C. 2009) and *BHC Interim Funding II, LP v. Compensation Management Inc., et al.*, C/A No. 11-cvs-6696 (N.C. 2012) ("the prior civil suits") which involved an allegedly improper factoring[1] scheme executed between employees of the Bank and a bank customer. ECF No. 58-1 at 2. Plaintiff was not named in either of the prior civil suits. *Id.* at 3–5.

On June 26, 2016, certain other employees of the Bank were indicted in the Middle District of North Carolina. It appears Defendant initially determined coverage for these individuals was appropriate under the Policy. However, on January 4, 2017, Defendant denied coverage claiming that the prior civil suits and the criminal indictment were considered a single claim because they constitute "interrelated wrongful acts," as defined in the Policy, and invoked the prior and pending litigation policy exclusion. ECF No. 16-3. Therefore, according to the terms of the Policy, that claim was deemed to be made no later than November 13, 2009, and so predated the Policy. *Id*. These other employees filed suit and have now settled with Defendant. *See* C/A No. 6:17-cv-00011-MGL (D.S.C. 2017).

Plaintiff was charged in a third superseding indictment issued on August 29, 2017. ECF No. 16-2 at 1. Defendant denied coverage for Plaintiff on September 27, 2017. ECF No. 57-4. The indictment describes the prior factoring agreement between the Bank and its customer and describes conduct dating back to 2003, with conduct of Plaintiff dating

---

[1]Factoring "traditionally involves the *sale* of accounts receivable at a discounted price." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 601 (4th Cir. 2010).

2

back to 2008. ECF No. 16-2. At issue in the present action is whether the prior civil suits bar coverage for Plaintiff under the terms of the Policy.

## APPLICABLE LAW

*Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

3

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

***Declaratory Judgment***

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act, however, gives the court the discretion to decline issuing the judgment. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*,

4

139 F.3d 419, 421 (4th Cir. 1998); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). "[W]hen a useful purpose will not be served, statute and practice have established the rule that the judgment may be refused when it is not necessary or proper at the time under all the circumstances." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (internal quotation marks omitted).

***South Carolina Law***

A federal court exercising diversity jurisdiction applies state substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citations omitted). It is undisputed that the substantive law of the State of South Carolina applies to this matter. Under the South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Financial Ins. Co.*, 514 S.E.2d 327 (S.C. 1999). The court must give policy language its plain, ordinary, and popular meaning. *Id*. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id*.; see *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc*., 162–163, 588 S.E.2d 112, 115 (S.C. 2003). This court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id*. An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 390 S.E.2d 471 (S.C. Ct. App.1990).

5

A policy clause extending coverage must be liberally construed in favor of coverage. *Torrington Co. v. Aetna Cas. and Sur. Co.*, 216 S.E.2d 547 (S.C. 1975). Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005); *Boggs v. Aetna Cas. and Sur. Co.*, 252 S.E.2d 565 (S.C. 1979). However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties. *Sphere Drake Ins. Co. v. Litchfield*, 438 S.E.2d 275 (S.C. Ct. App. 1993); *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

When a provision is ambiguous, the intent of the parties controls. *See Holcombe v. Orkin Exterminating Co., Inc.*, 317 S.E.2d 458 (S.C. Ct. App. 1984). Although the interpretation of a contract is generally a matter of law, the intent of the parties becomes a question of fact for the jury when the contract is ambiguous. *Kumpf v. United Tel. Co.*, 429 S.E.2d 869 (S.C. Ct. App. 1993). Accordingly, summary judgment is not appropriate where, due to an ambiguity, the intent of the parties is at issue.

## DISCUSSION

### *The Policy*

The Policy issued by Defendant is a "claims made" policy and provides coverage for claims first made against the insured during the policy period. ECF No. 57-1 at 6. The Policy was issued on August 6, 2014, and lapsed on August 6, 2017. *Id*. The Policy states in relevant part, that the "Insurer will pay on behalf of an **insured person**, **loss** that is the result of a **claim** for a **management practices wrongful act** first made through the **policy**

6

**period**." ECF No. 57-1 at 14. An insured person is "any person, who was, now is, or shall be a director, officer, . . . or **employee** of the **company**." ECF No. 57-1 at 17. Loss is defined as "any amount which any **insured person** . . . is legally obligated to pay as the result of a claim, and includes . . . reasonable **defense expenses**." ECF No. 57-1 at 17–18.

The Policy defines a claim, in part, as "a criminal proceeding commenced by the return of an indictment." ECF No. 57-1 at 16. Management practices wrongful act means "any actual or alleged, misstatement, misleading statement, error or omission, or neglect or breach of duty by an **insured person** acting solely in their capacity as: director, officer, . . . or **employee** of the **company**." ECF No. 57-1 at 18.

The Policy further states that,"all claims involving **interrelated wrongful acts** shall be considered a single claim and shall be deemed to have been first made when the earliest **claim** was first made." ECF No. 57-1 at 16. "Claims based upon or arising out of the same **wrongful act** or **interrelated wrongful acts** committed by one or more insured parties shall be considered a single **claim**, and only one retention and Limit of Liability shall apply to such single **claim**. Each such single **claim** shall be deemed to be first made on the date the earliest of such **claims** was first made, regardless of whether such date is before or during the **policy period**." ECF No. 57-1 at 24. Interrelated Wrongful Acts are defined as "**wrongful acts** that have as a common nexus any fact, circumstance, situation, event transaction or series of facts, circumstances, situations, events, or transactions." ECF No. 57-1 at 17.

7

The Policy also includes a Prior and Pending Litigation exclusion, which provides that

> The Insurer shall not be liable to make any payment for **loss** in connection with any claim based upon, arising out of, relating to, in consequence of, or in any way involving . . . any **claim** arising out of or in any way involving any litigation against the company or any **insured person** initiated prior to the PPL Date set forth below, or arising out of or in any way involving the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior litigation.

ECF No. 57-1 at 20 ,66.

***Whether the Policy is Illusory and Ambiguous***

Plaintiff argues first that the Policy is illusory because the Policy's definition of Interrelated Wrongful Acts and the language used in the Prior and Pending Litigation exception are so broad that, if applied as written, these provisions would essentially exempt coverage for any litigation expenses. ECF No. 57 at 7–8. Plaintiff further argues that these provisions are ambiguous in that their literal interpretations are illusory; accordingly, any other interpretation would be ambiguous. *Id*. at 8–9. Defendant asserts that these provisions are neither illusory nor ambiguous under South Carolina and relevant federal law. ECF No. 63 at 6–11.

The purpose of the illusory coverage doctrine is to protect insureds where the literal terms of the policy excludes from coverage "the very risk contemplated by the parties." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 321 (S.C. Ct. App. 1994), *writ granted in part on other grounds, decision aff'd*, 468 S.E.2d 304 (S.C. 1996); *accord NGM Ins. Co. v. Carolina's Power Wash & Painting, LLC*, C/A No. 2:08-cv-3378-DC, 2010

WL 146482, at *5 (D.S.C. Jan. 12, 2010) ("[T]he broad scope of the . . . exclusion in *Isle of Palms* prevented coverage for the very purpose that the contractor sought a commercial general liability policy."), *aff'd sub nom. NGM Ins. Co. v. Kuras*, 407 F. App'x 653 (4th Cir. 2011); *W. World Ins. Co. v. Empire Fire & Marine Ins. Co.*, C/A No. 7:06-cv-217-RBH, 2006 WL 3337427, at *7 (D.S.C. Nov. 16, 2006) ("[I]f the auto exclusion in the . . . policy were applied to deny a duty to defend in the case at bar, this would exclude the very risks that American Trans Med was trying to insure.").

The doctrine applies where the language of the policy "negate[s] virtually all coverage for the insured," *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp. 694, 699 (S.D. Ind. 1996), and the insurance contract, read literally, is "a delusion to the insured." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995) (internal quotation marks omitted). In other words, the doctrine applies when exclusions "in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability." *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 843 (Colo. App. 2008); *accord Jostens*, 527 N.W.2d at 118; *Mike's Speedway*, 949 F. Supp. at 699.

South Carolina courts have routinely held,

> Whether the language of a contract is ambiguous is a question of law for the court. A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation. The uncertainty in interpretation can arise from the words of the instrument, or in the application of the words to the object they describe. Whether a contract is ambiguous must be determined from the entire contract and not from any isolated clause of the agreement.

9

*Pee Dee Stores, Inc. v. Doyle*, 672 S.E.2d 799, 803 (S.C. Ct. App. 2009) (internal citations omitted).

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 797 (S.C. 2008) (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995)). "Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." *Greenville Cty. v. Ins. Reserve Fund, a Div. of S.C. Budget & Control Bd.*, 443 S.E.2d 552, 553 (S.C. 1994) (citing *McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993)).

At this procedural posture and considering the applicable law on the issues, the Court declines to find at this time whether as a matter of law the Policy is illusory or ambiguous because it is not necessary for a determination of Plaintiff's and Defendant's Motions. Accordingly, the Court will assume without deciding for purposes of only these Motions that the Policy is neither illusory nor ambiguous and address the remaining arguments from both parties.

### *Interrelated Wrongful Acts*

Plaintiff argues that even if the Policy is not illusory or ambiguous, South Carolina law requires that exclusions be narrowly construed against Defendant. ECF No. 57 at 9. He asserts that under the language of the Policy, an event must share a "common nexus [of] any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions" and that "nexus" is defined by Black's Law Dictionary

as "a connection or link, often a causal one." *Id*. at 10. He contends that there is an insufficient nexus of events between the prior civil actions and the pending criminal matter using a four-part test articulated by the Northern District of Alabama. *Id*.; *see also Worthington Fed. Bank v. Everest Nat. Ins. Co.*, 110 F.Supp.3d 1211, 1230–31 (N.D. Ala. 2015. Plaintiff notes that the prior civil cases and the pending criminal case are distinguishable because they:

(1) involve claims made by different parties;

(2) involve claims that arose from a difference set of acts or omissions in that the prior civil cases arose from the Bank's failure to correctly prioritize repayments of its clients' debts and the criminal proceedings arose from allegations that the defendants in that action defrauded the Bank, embezzled Bank funds, and caused materially false entries in the Bank's books and records to deceive regulators; moreover, there is no causal or logical connection between some of the bad acts alleged in the criminal proceedings and the actions alleged in the prior civil actions;

(3) the acts alleged in each matter are not a part of a similar pattern of activity as that term is used in insurance coverage because that term is generally used when a single actor inflicts a repeated harm on the same victim;

(4) there was a significant time lapse between the alleged causes giving rise to the complaints in the prior civil actions and the indictment in the criminal proceeding; and

(5) the claims arise from different injuries in that the claimants in the prior civil actions alleged economic injuries and the criminal proceeding involves alleged criminal offenses.

*Id*. at 11–13.

Accordingly, Plaintiff argues, the prior civil actions and the criminal proceeding are not connected under the Policy and the Interrelated Wrongful Acts provision[2] should not exclude coverage.

Defendant asserts that South Carolina courts have not adopted the test put forth by Plaintiff. ECF No. 63 at 5. Moreover, a broad definition of interrelated wrongful acts is appropriate and claims can be related "even if they involve distinct acts, affect separate people, and occur at different times." ECF No. 58-1 (quoting *CAMICO Mut. Ins. Co. v. Jackson CPA Firm*, C/A No. 2:15-cv-1823, 2016 WL 7403959, at *10 (D.S.C. 2016)). Defendant contends that the prior civil actions and the criminal proceeding share many facts and circumstances, situations, and transactions in common. ECF No. 58-1 at 12 (listing 20 purported common facts between the prior civil cases and the pending criminal proceeding). Defendant argues that because the pending criminal proceeding is related to the prior civil suits, the claim predates the Policy's effective date and there is no

---

[2]The parties disagree about whether the Interrelated Wrongful Acts language should be considered an exclusion or a provision of the Policy. *See* ECF No. 62 at 1–4 (Plaintiff's Response to Defendant's Motion for Summary Judgment asserting that Defendant has essentially argued that this language does not constitute an exclusion). Defendant contends that this is not an exclusion and, accordingly, the rule of narrow or strict construction related to exclusions are inapplicable. ECF No. 58-1 at 10.

The distinction is significant because, as previously stated in this Order, insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005); *Boggs*, 252 S.E.2d 565.

Here, the Court notes that similar language was not considered an exclusion in *CAMICO Mutual Insurance Company v. Jackson CPA Firm*, C/A No. 2:15-cv-1823-PMD, 2016 WL 7403959, at *10 (D.S.C. 2016). Accordingly, at this time and procedural posture, the Court declines to consider the Interrelated Wrongful Acts provision as an exclusion under the Policy.

coverage under the Policy.

The Fourth Circuit Court of Appeals has provided guidance on the interpretation of interrelated wrongful acts. In *W.C. and A.N. Miller Development Company v. Continental Casualty Company*, that Court found that a 2010 suit and a 2006 suit were interrelated wrongful acts within the meaning of the policy; therefore, the 2010 suit was not covered because it was deemed to predate the policy. 814 F.3d 171 (2015). The policy in that case contained the same provision at issue here—that more than one claim involving interrelated wrongful acts would be considered one claim made on the date on which the earlier claim was made. It defined interrelated wrongful acts as "any Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event." The Court stated that, under Maryland law, there is no rule "that insurance contracts are to be construed most strongly against the insurer." *W.C.*, 814 F.3d at 176 (quoting *Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins., Co.*, 67 F.3d 63, 65 (4th Cir. 1995)). Further, it found that, under the broad definition of interrelated wrongful acts used in the policy, the two lawsuits were sufficiently related by a common nexus of fact. *W.C.*, 814 F.3d at 177. Specifically, the Court determined that the two suits shared several common facts, a common transaction, and a common circumstance. *Id*.

In *CAMICO*, the Court considered whether two claims were interrelated under the terms of the policy. 2016 WL 7403959. The policy in that case used the same "logically or casually connected" language also used in *W.C.* The Court determined that the two claims were related under the policy because they involved the same acts and omissions of the same person, whose illness caused those acts and omissions. *Id*., at *11. The

13

Court recognized that, under the terms of that policy, claims that share even a single logically connective fact, circumstance, or situation would be related sufficient to bar coverage. *Id*.

As an initial matter, the Court recognizes that the policy language used in *W.C.* and *CAMICO* was slightly different from the language at issue in the Policy in the present action. Those cases use the term "logically or causally connected," while the Policy at issue here uses the phrase "common nexus." The Court also notes that in *CAMICO*, the related claims were made based on the acts and omissions of a single person whose "disease-induced impairment" constituted the causal connection between the claims in the court's view of the facts. *Id*. In contrast, here Plaintiff was neither named nor were any of the allegations made involving him in the allegedly related claims.

While the caselaw is helpful in an analysis of how other courts have construed terms in other policies, there remains a genuine issue of material fact as to whether the acts alleged in the criminal proceeding in this case are sufficiently related to the prior civil suits so as to be "interrelated." Moreover, neither the District of South Carolina nor the Fourth Circuit Court of Appeals indicated that the relevant factors identified in the opinions cited above were to be considered an exhaustive list of considerations to determine whether two claims are sufficiently connected. Accordingly, based upon the limited factual record provided to the Court at this time and in light of the language used in the Policy, genuine issues of material fact remain as to whether there is a sufficient "common nexus" such that the interrelated wrong acts provision would bar coverage in this case.[3]

---

[3]This Court further notes that the *CAMICO* court did not reach its conclusion until the record was fully developed at trial, having denied the parties' cross-motions for

*The Prior and Pending Litigation Exclusion*

Plaintiff further argues that the Prior and Pending Litigation exclusion is likewise inapplicable to the case at hand because the criminal proceeding did not "arise from" the prior civil suits, as required by the language of the exclusion. ECF No. 57 at 15. Plaintiff dismisses the remaining "or in any way involving" language from that provision by arguing that he has already established that it is overbroad and illusory. *Id*. As previously stated in this Order, for purposes of these Motions only, the Court will assume without deciding that the Policy is neither illusory nor ambiguous. Thus, it is unnecessary to consider whether the criminal proceeding arose from the prior civil suits without also considering whether the criminal proceeding in any way involves the same or substantially the same fact, circumstance, or situation as the prior civil suits.

The Court notes that the language of this exclusion is very broad; however, for the reasons listed above in the discussion of whether the prior civil suits would bar coverage as Interrelated Wrongful Acts, the Court finds there also remain genuine issues of material fact with respect to whether the Prior and Pending Litigation Exception would apply, particularly in light of the legal standard applicable to exclusions in contracts.

*Estoppel*

In his Response to Defendant's Motion for Summary Judgment, Plaintiff also asserts that the Defendant should be estopped from denying coverage. "Equitable estoppel occurs where a party is denied the right to plead or prove an otherwise important fact because of

---

summary judgment due to the existence of genuine issues of material fact. *See CAMICO*, 2016 WL 7403959, at *1.

something which he has done or failed to do." *Parker v. Parker*, 443 S.E.2d 388, 391 (S.C. 1994).

The elements of equitable estoppel as related to the party being estopped are:

> (1) conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped.

*Strickland v. Strickland*, 650 S.E.2d 465, 470 (S.C. 2007).

Plaintiff argues that Defendant knew of the prior civil suits and the pending criminal indictments when it agreed to indemnify the Bank. ECF No. 62 at 12. Moreover, Plaintiff asserts that the record creates a genuine issue of material fact with respect to whether Defendant began denying coverage once it became evident that the costs would exceed the initial estimate rather than based on any good faith interpretation of the Policy language. *Id*.

The Court agrees with Plaintiff that a genuine issue of material fact exists regarding whether equitable estoppel would apply in the current action.[4] The Court notes that the

---

[4] The Court notes that Plaintiff's claim arose from the third superseding indictment on August 29, 2017, which is after the Policy at issue had lapsed. *See* ECF No. 57-1 at 6 (the policy period encompassed August 6, 2014, through August 6, 2017). However, because no dispute exists regarding the fact that the first indictment and the third superseding indictment involve a common nexus of fact, coverage was triggered by the return of the first indictment on June 26, 2016. *See* ECF No. 57-1 at 17 (providing the

16

Bank's disclosures to Defendant in 2012 specifically included the two named prior civil suits[5] and the 2014 disclosures included a notation that "[t]he bank has an officer who has been issued a target letter from the United States Department of Justice. A copy of this letter is attached." ECF No. 62-2 at 10. Accordingly, it appears that an argument could be made that Defendant issued the Policy when it was aware that some bank employees, if not Plaintiff personally, would shortly be making a claim for defense expenses. It is also possible that Plaintiff could establish that Defendant's issuance of the Policy under these circumstances amounted to a false representation. *See Standard Fire Ins. Co. v. Marine Contracting and Towing Co., et al.*, 392 S.E.2d 460, 462 (1990) ( "[T]he scope of risk under an insurance policy may be extended by estoppel if the insurer has misled the insured into believing the particular risk is within the coverage."). Thus, more facts are needed to determine whether equitable estoppel is applicable in the present action.

## **REMAINING MOTIONS**

As explained above, at this procedural posture, Plaintiff has not established that he is likely to succeed on the merits of this case. Further, as Plaintiff has capable counsel representing him in the underlying criminal indictment, he cannot show that he is likely to suffer irreparable harm in the absence of injunctive relief. Accordingly, the Plaintiff's Motion for Preliminary Injunction is denied. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (holding that a party seeking a preliminary injunction or temporary restraining order must establish all four of the following elements: (1) he is likely to succeed

---

definition of Interrelated Wrongful Acts).

[5]After disclosing the prior civil suits, the Bank noted that it "[did] not currently anticipate insurance claims related to these cases." ECF No. 62-1 at 10.

on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest); *see also the Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010).

Plaintiff's Motion to Expedite Review and Motion for Partial Judgment on the Pleadings are moot as a result of this Order.

## **CONCLUSION**

Wherefore, based upon the foregoing, Plaintiff's Motion for Partial Summary Judgment [57] and Defendant's Motion for Summary Judgment [58] are DENIED. Plaintiff's Motion to Expedite Review and for Preliminary Injunction [26] is DENIED in part and DENIED as MOOT in part, as explained above. Plaintiff's Motion for Partial Judgment on the Pleadings [34] is DENIED as MOOT.

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.
United States District Judge

March 8, 2018
Spartanburg, South Carolina